# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IDEAL CAPITAL LIMITED PARTNERSHIP, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-2239 |
| | § | |
| C&C NORTH AMERICA, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant's Motion for Partial Summary Judgment (Dkt. 15). Upon consideration of the parties' pleadings and arguments, the summary judgment record, and the applicable law, defendant's motion is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

In March, 2005, Ideal Capital Limited Partnership ("Ideal") took 100 shares of preferred stock in C & C North America, Inc. ("C&C") as part of a larger transaction. Pursuant to the terms of the Certificate of Designation of Rights and Preferences ("the Certificate"), which governs the stock issued to Ideal, C&C was granted a repurchase option. The language governing the option states:

> iii. Repurchase Option
>
> (A) Repurchase Price. Any time, and from time-to-time after March 2, 2008 (the "Repurchase Date"), the Corporation [C&C] may exercise a continuing option to require holder of the Series A Preferred Stock to sell all or a portion of such shares to the Corporation (the "Repurchase Option"). The purchase price (the "Repurchase Price") per share for the Series A Preferred Stock **upon exercise of the Repurchase Option shall be** equal to one one-hundredth (1/100) of the Corporation's four trailing quarters of consolidated earnings before deductions for interest, taxes,

depreciation and amortization ("EDITDA") [sic], as reflected on the Corporation's most recent audited annual financial statements or unaudited quarterly financial statements delivered to the holder of the Series A Preferred Stock pursuant to paragraph v. hereunder, multiplied by seven (7), with the resulting product multiplied by two and 73/100 percent (2.73%). EBITDA shall be determined in accordance with the audited balance sheet of the Corporation, and related audited statements of income, changes in shareholders equity and cash flows for each of the fiscal years including and after the Closing, including in each case the notes thereto together with the report thereon by the independent certified public accountants regularly engaged by the Corporation, and unaudited balance sheets for each interim quarter, together with related statements of income, changes in shareholders equity and cash flows for each quarterly period certified by the officer of the Corporation in the United States responsible for the preparation of the Corporation's financial statements, which financial statements shall fairly present the financial condition and the results of operations, changes in shareholders equity and cash flows of the Corporation as of their respective dates, **all in accordance with GAAP** (Generally Accepted Accounting Principles as applied in the United States) applied on a basis consistent with the basis on which the balance sheet and other financial statements referred to in this paragraph were prepared. The financial statements referred to in this paragraph (iii) will reflect the consistent application of such accounting principles throughout the periods involved, except as disclosed in the notes to such financial statements.

Dkt. 15, Ex. A (emphasis added).

On June 27, 2008, C&C attempted to exercise its repurchase option when C&C's Chief Financial Manager, Ed Pfaff, sent a letter (the "Exercise Letter") to Ideal stating that C&C "hereby notifies [Ideal] as record holder of the Shares that [C&C] hereby exercises its option to repurchase the Shares pursuant to Section B.iii. of the Certificate." Dkt. 15, Ex. B. Included in the letter is a paragraph outlining C&C's method for determination of the purchase price pursuant to the formula set out in the Certificate and stating that the price is $1,191,684. The letter also stated that "[t]he check is being sent with the condition that the endorsing of, depositing or negotiation of the check

shall be deemed as an accord and satisfaction of amounts due for the repurchase."

Attached to the letter were the financial statements used to determine the purchase price, including the audited 2007 year-end statement, which included the following statement from the auditor:

> [C&C's] financial statements do not include the accounts of Prisma Properties, L.P. and Subsidiaries. . .[I]n our opinion, the Company's consolidated financial statements should include the accounts of Prisma Properties, L.P. and Subsidiaries to conform with accounting principles generally accepted in the United States of America.

Dkt. 15, Ex. B.

Ideal responded to C&C's letter on July 2, 2008 through its attorney.  The letter (the "Rejection Letter") stated:

> Please be advised that Ideal Capital, Limited Partnership ("Ideal Capital"), as holder of the Stock, rejects your exercise of the Option because it does not meet the terms and conditions of exercise set forth in the Certificate of Designations.  Your check in the amount of $1,191,684 payable to the order of Ideal Capital is being returned to you under separate cover. . . The independent auditor's report to the financial statements upon which your calculation of EBITDA is based makes clear that the financial statements were not prepared in accordance with GAAP because Prisma Properties, L.P. ("Prisma") is not included.  Since your calculation of the purchase price for the Shares is not in accordance with the requirements of the Certificate of Designations, your exercise of the Option is void.

Dkt. 15, Ex. C.

On July 7, 2008, Ideal brought several causes of action against C&C.  At issue presently are Ideal's claims for Breach of Certificate ¶ B.iii(A), Breach of Purchase Agreement § 2.2(b), and Declaratory Judgment.  Dkt. 1.  All of these claims seek to compel repurchase of the stock for approximately $6 million, the price that Ideal contends is appropriate based on the requirements of the Certificate.  C&C has moved for summary judgment on those claims.

3

## II. LEGAL STANDARD

A movant may ask the court to dispose of any part of a case and render a partial summary judgment.  *See* FED. R. CIV. P. 56.  Partial summary judgment is a pretrial adjudication that certain issues are deemed established for trial, thereby enhancing the efficiency of the proceedings by eliminating issues on which there is no genuine issue of fact.  *See FDIC v. Massingill*, 24 F.3d 768, 774 (5th Cir. 1994).

The court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact warranting trial.  *Id.* at 322.  "For any matter on which the non-movant would

bear the burden of proof at trial . . ., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)).

### III. ANALYSIS

Ideal claims that C&C successfully exercised its repurchase option by sending the Exercise Letter, and that a binding bilateral contract was formed at that time.  Since C&C incorrectly calculated the purchase price, Ideal argues that it is now in breach of that contract.  C&C argues that it never effectively exercised the option since its purported exercise was not in compliance with the Certificate, and was rejected by Ideal upon receipt.  The parties agree on all of the facts relevant to the disposition of this motion, and agree that the only question for the court is whether C&C effectively exercised its option.  The court finds that it did not.

Under Texas law, once an optionee exercises an option in accordance with the terms of an option agreement, the option becomes a binding bilateral contract.  *Tye v. Apperson*, 689 S.W.2d 320, 323-24 (Tex. App.–Fort Worth 1985, writ ref'd n.r.e.); *Walker v. Horine*, 695 S.W.2d 572, 576 (Tex. App.–Corpus Christi 1985, no writ); *White v. Miller*, 518 S.W.2d 383 (Tex. Civ. App. 1974, writ dism'd).  However, the exercise of an option must be "unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation and according to the terms and conditions of the option."  *West Tex. Transmission, L.P. v. Enron Corp.*, 907 F.2d 1554, 1565 (5th Cir. 1990)

(citing *Scott v. Vandor*, 671 S.W.2d 79, 84 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e)). C&C argues that its purported exercise was not effective because it was (1) not "according to the terms and conditions of the option," since it supported its purchase price with GAAP non-compliant financial statements, and (2) was not unconditional, since it tendered payment by check "with the condition that the endorsing, depositing or negotiation of the check [would] be deemed as accord and satisfaction of amounts due."

"Unless the option contains provisions to the contrary, all that is required of the optionee is that he notify the optionor, prior to the expiration of the option, of his decision to exercise the option." *Odum v. Sims*, 609 S.W.2d 881, 882 (Tex. Civ. App.–San Antonio 1980, no writ). Based on this language, Ideal argues that C&C's purported exercise of the option was valid and in compliance with the terms and conditions of the option, since there were no terms and conditions of the option other than an expression of a desire to exercise. Ideal supports this argument by focusing on the language requiring calculation of the repurchase price "upon exercise of the Repurchase Option." According to Ideal, the word "upon" implies that the repurchase price is calculated after a bilateral contract has already been formed based merely on expression of an intent to exercise the option. Accordingly, Ideal concludes that the payment terms set out in the Certificate are "subsequent obligations of the binding bilateral contract that was formed when C&C exercised the Repurchase Option." Dkt. 16.

Ideal's argument would be more convincing if C&C's Exercise Letter had merely expressed a desire to exercise the option. If that had been the case, the evidence would support the finding of a binding contract, whose price was to be determined subsequently. However, C&C's Exercise

6

Letter specifically conditions its exercise on acceptance by Ideal of the $1,191,684 payment as the full purchase price.

An option is essentially an open offer waiting for the optionor's acceptance. "Before the option can ripen into an enforceable contract of sale, the rightholder must manifest his acceptance." *West Tex. Transmission*, 907 F.2d at 1565. An acceptance which "modifies, adds to or otherwise qualifies the terms of the offer, generally constitutes a rejection of the option and a counter-offer." *Id.* (citing *Austin Presbyterian Theological Seminary v. Moorman*, 391 S.W.2d 717 (Tex.)). C&C's Exercise Letter modified the terms of the original offer since it tendered payment in an amount that was not calculated in accordance with the formula laid out in the Certificate. Upon receiving C&C's Exercise Letter, Ideal had the ability to either accept or reject what amounted to C&C's counter-offer. Ideal clearly rejected the counter-offer in its Rejection Letter, which is unambiguous. Accordingly, there was never a binding repurchase agreement between Ideal and C&C.

## IV. CONCLUSION

Since C&C has shown as a matter of law that there was no binding contract for repurchase of the stock, it is entitled to a dismissal of Ideal's claims which depend on such a contract. Plaintiff's claim I.B. is for breach of the alleged contract for repurchase. Since there was no contract for repurchase, defendant is entitled to dismissal of that claim. Accordingly, claim I.B. is DISMISSED WITH PREJUDICE. C&C has also sought dismissal of claim I.D. for Breach of Purchase Agreement. That claim relies on the allegations of claims I.A, I.B, and I.C. Since only claim I.B. has so far been dismissed, dismissal of claim I.D. is premature at this point. However, plaintiff is precluded from seeking relief for its claim of Breach of Purchase Agreement based on the allegations contained in claim I.B. Plaintiff has also requested declaratory judgment on eight different points.

7

Defendant has moved to dismiss Plaintiff's entire claim for declaratory judgment, which also seems premature, since the claim relies on determinations that have not even been presented to the court at this point.  Accordingly, C&C's motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.  Plaintiff's claim I.B. in its original complaint (Dkt. 1) is DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on May 4, 2009.

Gray H. Miller
United States District Judge